[No. 4805–1–II.   Division Two.   May 11, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES EDWARD TURNER, *Appellant*.

*James Edward Turner*, pro se, and *Robert A. Ellis*, for appellant.

*C. Danny Clem, Prosecuting Attorney*, and *Kenneth G. Bell, Deputy*, for respondent.

Worswick, J.—Defendant appeals multiple convictions arising out of a nighttime, violent armed robbery of a family in their residence. He claims error in the admission of his custodial statements, that he was exposed to double jeopardy because of the multiplicity of charges and that his sentence was too severe. Additional claims are made in a pro se brief. We affirm.

During the early evening hours of January 7, 1980, William Sackman, his wife and their two children, ages 10 and 7 respectively, were at their home near Seabeck, Kitsap County. About 7:30 p.m., there were two knocks at the door. Mr. Sackman went to the back bedroom because he was not suitably dressed to receive visitors. Mrs. Sackman opened the door and was confronted by a black male armed with a shotgun (later identified as defendant) and a white male armed with a revolver. Defendant stated, "This is a stick up," grabbed Mrs. Sackman by the arm, pushed her back toward the living room and told her to lie on the floor. Defendant told the children to lie on the floor and also told them that if they kept their heads down they would not get

hurt.

Defendant confronted Mr. Sackman in the bedroom, stated "this is a stick up" and ordered him to lie down on the floor with his hands behind his back. Defendant pointed the shotgun at Mr. Sackman's stomach. After Mr. Sackman complied, defendant put the shotgun behind his ear and demanded "all of your money or this is going off . . ." Mr. Sackman told defendant of his wallet in the bedroom. Defendant responded that Mr. Sackman "better come up with more than that or it's going off." Thereafter, Mr. Sackman was made to lie on the floor of the living room with the other members of his family. Defendant's accomplice placed pillowcases over the heads of both Mr. and Mrs. Sackman and coats over the heads of the children. Mr. and Mrs. Sackman were also handcuffed.

Numerous items of property were taken, including a number of rifles and shotguns, approximately $100 cash from Mr. Sackman's wallet and Mrs. Sackman's purse, a quantity of ammunition, a pair of binoculars, a ring from a nightstand in the bedroom, two rings from Mrs. Sackman's hand (although those items were not removed from the Sackman residence) and a substantial collection of coins. In addition, a metal box containing personal papers was handled and opened during this period.

After some time, the children were taken from the living room and were placed in a bedroom closet. Thereafter, Mr. and Mrs. Sackman were taken to the same closet. Defendant instructed them to stay in the closet or they would be shot. Defendant and the other male then left.

■ Defendant claims error in the admission of his pretrial statements contending he was undergoing heroin withdrawal when questioned and did not voluntarily waive his *Miranda* rights. When such an allegation is made, we must determine whether the statements were the product of a rational intellect and a free will. *State v. Gregory,* 79 Wn.2d 637, 488 P.2d 757 (1971), *overruled on other grounds* in *State v. Rogers,* 83 Wn.2d 553, 520 P.2d 159 (1974). Intoxication alone does not, as a matter of law,

render a defendant's custodial statements involuntary and thus inadmissible. *State v. Smith,* 15 Wn. App. 103, 547 P.2d 299 (1976).

Following a CrR 3.5 hearing, the court made findings to which no error has been assigned. They are verities on this appeal. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981). These findings establish that (1) defendant was repeatedly advised of his *Miranda* rights; (2) he indicated he wanted to waive them; (3) he appeared rational at all times; and (4) the jail physician saw no necessity for medical treatment. The court concluded that defendant had waived his *Miranda* rights and that the statements were voluntary and admissible. We agree.

Defendant was charged with, and found guilty of, first degree robbery of husband (count I), first degree robbery of wife (count II), first degree burglary (count III), first degree assault of son (count IV), first degree assault of daughter (count V) and conspiracy to commit first degree robbery (count VI). He contends the convictions for assault, burglary and conspiracy are barred on either double jeopardy or statutory merger grounds because, essentially, only a robbery occurred during a single event.

Defendant was sentenced concurrently on counts I, III, IV, V, and VI. Therefore, his contention is fully disposed of by *State v. Johnson,* 96 Wn.2d 926, 639 P.2d 1332 (1982), in which our Supreme Court reaffirmed the Washington rule that a defendant is being punished only once for his unlawful act if given concurrent sentences for multiple convictions and if the resulting disposition does not exceed the penalty for any one of the offenses of which he was properly convicted. That rule applies precisely to defendant.

Defendant contends the State was prohibited by the double jeopardy clause from charging him with two counts of robbery. Because the sentence on count II was consecutive to all of the other sentences, we examine this claim under the "same evidence" test articulated in *State v. Roybal,* 82 Wn.2d 577, 512 P.2d 718 (1973), which holds that a

defendant's double jeopardy protections are violated if the charged offenses are "identical both in fact and in law." Here, Mr. Sackman turned over his wallet and Mrs. Sackman turned over her rings; each responded to demands of defendant or his accomplice. These facts supported separate and independent charges of robbery. Each offense could stand alone. The offenses were not identical in fact and law. *See State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975).

Defendant was given consecutive sentences of 25 years each on the robbery convictions and contends that these are so disproportionate to the nature of the offense he committed they constitute cruel and unusual punishment. *See State v. Fain,* 94 Wn.2d 387, 617 P.2d 720 (1980).[1] We reject this contention.

The crime of robbery is serious and this event was particularly so because the victims, who were enjoying a quiet evening in their home, were selected at random and were subjected to a high degree of trauma. Given these factors the sentence is not cruel and unusual. *See State v. Bresolin, supra* (two 20–year consecutive terms for similar crime upheld).

Defendant contends that his sentence violates the equal protection clause because it was disproportionate to that of his accomplice who received a suspended sentence with 1 year in the county jail. The test for determining whether the disparity in coparticipants' sentences violates equal protection is whether there is a rational basis for the differentiation. *State v. Bresolin,* 13 Wn. App. at 397.

The accomplice pleaded guilty to three counts. The prosecutor requested a lenient sentence in exchange for testimony at a murder trial and an agreement to pay restitution. Defendant made no such deal. Also, the record indicates that defendant's prior criminal history was more

---

[1] Under the terms set by the Board of Prison Terms and Paroles, the first term is to run 180 months and the second is to run 90 months. Each term has a 7½–year minimum.

significant. It also indicates that defendant was the more aggressive of the two; he placed a shotgun behind the victim's ear and threatened to blow his head off. We find a rational basis for the differentiation.

Defendant makes several contentions in a pro se brief. To the extent that they do not duplicate matters already considered, can be identified in the record and are understandable, we deal with them as follows:

■ First, he contends he was illegally arrested. We need only observe that an illegal arrest does not void a subsequent conviction. *Gerstein v. Pugh,* 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975).

■ Next, he claims error because of the victim's pretrial and in–court identifications. Reliability is the key to determining the admissibility of such evidence. *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977). The victims viewed their assailants in their home for a significant length of time. Their testimony was sufficiently reliable. *See Neil v. Biggers,* 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

■ Next, he claims error in several instructions (including that defining the State's burden of proof (WPIC 4.01) and circumstantial evidence (WPIC 5.01), which do not merit discussion). He contends that instruction No. 11 (definition of "knowingly" and acting "with knowledge") was held defective in *State v. Shipp,* 93 Wn.2d 510, 610 P.2d 1322 (1980). This contention is correct as far as it goes but that is not far enough. The instructions made it clear that intent was an element as to each charged offense. Intent was also defined in a separate instruction. Thus, the error, if any, was harmless because intentional acts are, as a matter of law, knowing acts. *State v. Hinz,* 93 Wn.2d 510, 610 P.2d 1322 (1980), companion case with *Shipp*; RCW 9A.08.010(2).

■ Next, he claims error for failure to give lesser included offense instructions. None was requested; there was no error.

Finally, he claims ineffective assistance of counsel. After

reviewing the record and applying the standard of *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302 (1978), we conclude defendant was afforded effective representation and a fair and impartial trial.

Affirmed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied June 11, 1982.

Review denied by Supreme Court August 27, 1982.