[No. 17427-4-I.  Division One.  July 29, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. JOEL LEE CLINTON, *Appellant.*

672

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

PEKELIS, J.—Joel Lee Clinton appeals his sentence for a

conviction on three counts of first degree rape and three counts of first degree burglary. He contends that he was denied the effective assistance of counsel and that his exceptional sentences are unsupported by the record, clearly excessive, and, in light of a codefendant's sentences within the standard range, violative of equal protection.

## I

On May 25, 1985, Joel Clinton, Leroy Jones, and Alvin Hicks forced their way into the home of 67–year–old L.H. L.H. was pushed to the floor and taken to the bedroom where Hicks removed her underwear and forced a carrot into her vagina. After tying her up, the three men left with various items from L.H.'s apartment.

On May 27, 1985, Clinton, Jones, Hicks, and Darrel Randall forced their way into the home of K.S. K.S. was struck in the face, kicked in the stomach, and raped by each of the four men. They tied her up and left with a rifle and various items of clothing.

On June 15, 1985, Clinton and Jones forced their way into the home of K.C. They held a knife to her throat while they searched her apartment. When K.C. resisted, she was struck in the face and cut on the arm. Then the two men raped her, tied her up, and left with various personal items.

Clinton was arrested on June 19, at which time he admitted his participation in the three incidents. On June 24, 1985, Clinton was charged in juvenile court with one count of first degree burglary, two counts of first degree robbery, and three counts of first degree rape. After the juvenile court declined jurisdiction, Clinton was charged in Superior Court with three counts of first degree rape and three counts of first degree burglary. On September 10, in the presence of his trial attorney (who is not counsel on appeal), Clinton pleaded guilty to all six counts. His plea was made with the understanding that on each of the three rape counts the State would recommend an exceptional sentence of 9 years, which, by statute, would run consecutively. In addition, Clinton stipulated to the facts contained

in the certification for determination of probable cause.

On October 18, at the sentencing hearing, the sentencing judge found that the three rape/burglary incidents did not involve "[s]eparate crimes encompassing the same criminal conduct." *See* former RCW 9.94A.400(1)(a). Accordingly, the court found that the presumptive sentencing range for each of the three burglary convictions was 87 to 116 months. Clinton was sentenced to 116 months on each count, to be served concurrently with each other and with the sentences imposed on the rape convictions. *See* RCW 9.94A.400(1)(a).

Because first degree rape is a "serious violent offense" as defined in former RCW 9.94A.330, the sentences for the three rape convictions were determined pursuant to RCW 9.94A.400(1)(b). The court determined that the presumptive range for the first rape conviction was 67 to 89 months, and that the presumptive range for each of the other two was 51 to 68 months. The sentencing judge followed the recommendation of the State and imposed an exceptional sentence of 9 years for each conviction. As required by RCW 9.94A.400(1)(b), the sentences for the three rape convictions were ordered to run consecutively to one another and concurrently with the sentences for the three burglary convictions.

## II

We first address Clinton's contention that the reasons given for the exceptional sentences were insufficient and unsupported by the record. The trial court may impose a sentence outside the standard range if it finds that there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). Whenever an exceptional sentence is imposed, the court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3). The statute provides a list of factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. RCW 9.94A.390. However, these factors are only illustrative and

are not to be considered exclusive. *State v. Nordby,* 106 Wn.2d 514, 516, 723 P.2d 1117 (1986).

In imposing an exceptional sentence for each of the three rape convictions, the court entered findings and conclusions which stated in part:

II. CONCLUSIONS OF LAW

As to counts I and II, involving the rape of [L.H.], a 67–year–old woman, the court finds she was a vulnerable victim due to her age.

As to all counts the court finds the crimes were committed in such a manner as to demonstrate deliberate cruelty. The court further finds that the conduct here was substantially more cruel than the conduct inherent in the definitions of the crimes of rape [in the first degree] and burglary [in the first degree].

The defendant and his codefendants premeditated and planned these crimes. They demonstrated excessive brutality when it was not necessary to strike the victims to accomplish the crimes.

The rape of [L.H.] with the carrot (counts I and II) was dehumanizing and humiliating. The multiple rapes of [K.S.] with each defendant assisting the others in addition to committing his own rape was dehumanizing and humiliating resulting in substantial psychological injury to that victim and similarly to [K.C.].

■ An exceptional sentence is subject to appeal by either the State or the defendant. RCW 9.94A.210(2). In reviewing the imposition of an exceptional sentence, the reviewing court must first determine whether the trial court's reasons are supported by the record. *Nordby,* 106 Wn.2d at 517; RCW 9.94A.210(4)(a). Since this is a factual determination, the trial court's reasons will be upheld unless they are found to be "clearly erroneous." *Nordby,* 106 Wn.2d at 517–18. Second, the reviewing court must independently determine whether, as a matter of law, the trial court's reasons justify an exceptional sentence. *Nordby,* 106 Wn.2d at 518; RCW 9.94A.210(4)(a). The reasons given must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. *Nordby,* 106 Wn.2d at 518.

Clinton contends that in this case the trial court's reasons either (1) are not supported by the record or (2) rely on factors which were already taken into account in determining the presumptive ranges for his offenses.

If the victim of an offense was particularly vulnerable due to advanced age, then that fact may, as a matter of law, be used to justify the imposition of an exceptional sentence. *See* RCW 9.94A.390. The record clearly supports the trial court's conclusion that L.H. was 67 years old. Clinton contends, however, that this fact alone is insufficient to establish that she was "particularly vulnerable" due to advanced age. Although there are no Washington cases directly on point, the Minnesota Supreme Court has held that under its determinate sentencing scheme, which greatly influenced our own, a 66–year–old rape victim was "particularly vulnerable due to her age." *State v. Van Gorden,* 326 N.W.2d 633, 634 (Minn. 1982), *cited with approval in State v. Wood,* 42 Wn. App. 78, 81, 709 P.2d 1209 (1985), *review denied,* 105 Wn.2d 1010 (1986). We likewise find that L.H. was particularly vulnerable due to her age, and that this fact can be used to justify an exceptional sentence.

"Deliberate cruelty" is another aggravating factor identified in RCW 9.94A.390 which the trial court cited in justification of the exceptional sentences. The record reveals several facts which support a finding of deliberate cruelty: L.H. was pushed to the floor, K.S. was struck in the face and kicked in the stomach, and K.C. was struck in the face and cut on the arm. Clinton contends, however, that these facts may not be used to justify the exceptional sentences because they were necessarily considered in determining the presumptive range for his burglary sentences. *See Nordby,* 106 Wn.2d at 518.

Clinton correctly points out that, as charged, each of the three first degree burglary counts contains an assault as an essential element. *See* RCW 9A.52.020(1)(b). It does not follow, however, that the assaultive conduct could not be

used as aggravating factors in relation to the rape counts. As charged, each of the three first degree rape counts required the State to prove that Clinton "[f]eloniously enter[ed] into the building or vehicle where the victim [was] situated." RCW 9A.44.040(1)(d). The State was not required to show any assault beyond the rapes themselves. Thus, while it can be argued that the facts in question were necessarily taken into consideration by the Legislature in determining the standard range for first degree *burglary,* assaultive behavior beyond the rape itself was not necessarily considered in determining the standard sentence range for first degree *rape* as charged.[1] Consequently, the additional assaults, compounding the rapes, may be used to justify the exceptional sentences.

On the other hand, the rape of L.H. with the carrot should not have been used to justify an exceptional sentence. First degree rape requires, as an essential element, an act of "sexual intercourse" as defined in RCW 9A.44-.010(1). *See* RCW 9A.44.040. But for the penetration with the carrot, there was no "sexual intercourse," and hence no rape. Thus, the use of the carrot was necessarily taken into account in determining the presumptive range for the rape of L.H. and should not have been used to justify an exceptional sentence. *See Nordby,* 106 Wn.2d at 518.

The court also cited the *multiple* rapes of K.S. and K.C. as reasons justifying exceptional sentences for those offenses. Multiple penetrations of the victims are clearly supported by the record, and have been held to justify a departure from the standard range. *See State v. Dennis,* 45 Wn. App. 893, 897, 728 P.2d 1075 (1986), *review denied,* 108 Wn.2d 1008 (1987); *State v. Altum,* 47 Wn. App. 495, 503, 735 P.2d 1356 (1987).

To summarize, an exceptional sentence for the rape of

---

[1]Furthermore, the burglary convictions were not taken into account in computing the offender scores for the rape convictions. *See* RCW 9.94A.400(1)(b).

L.H. was y justified by the victim's age and by the defendant's deliberate cruelty, but not by the use of the carrot. Exceptional sentences for the other two rapes were justified by the defendant's deliberate cruelty and by the multiple penetrations.

### III

Clinton also contends that the sentences for his three rape convictions should be reversed because they are "clearly excessive." *See* RCW 9.94A.210(4)(b) (exceptional sentence subject to reversal if reviewing court finds it was "clearly excessive"). Had Clinton been sentenced at the top of the standard range for each of the three rape convictions, his total period of confinement would be 225 months. Instead, with an exceptional sentence of 9 years for each rape conviction, the total is 324 months.

The trial court's decision regarding the length of an exceptional sentence is subject to review only for an abuse of discretion. *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986). A sentence will be reversed as "clearly excessive" only if the trial court's action was one that "no reasonable person would have taken." *State v. Armstrong,* 106 Wn.2d 547, 551–52, 723 P.2d 1111 (1986). The practical effect of this standard is to guarantee that an appellate court will "rarely, if ever" overturn an exceptional sentence because of its length. *Armstrong,* 106 Wn.2d at 553 (Goodloe, J., dissenting). We conclude that in this case the trial court did not abuse its discretion in imposing a sentence less than double the standard range for each rape conviction.

### IV

Finally, Clinton contends that he was denied the equal protection of the laws because he was given exceptional sentences while his codefendant, Jones, was sentenced within the standard range. Clinton claims that there was no rational basis for a differentiation between the two.

The State argues that the sentencing reform act permits disparate sentences for codefendants because its

stated purpose is to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history". RCW 9.94A-.010(1). This argument fails on several grounds. First, the cited purpose appears to be merely an explanation of the factors used in the establishment of standard sentence ranges themselves. It is not a justification for the imposition of exceptional sentences, much less disparate sentences. Furthermore, we note that another stated purpose of the sentencing reform act is to impose sentences which will be "commensurate with the punishment imposed on others committing similar offenses". RCW 9.94A.010(3).[2]

More importantly, the passage of the sentencing reform act does not affect the applicability and durability of the equal protection clause. RCW 9.94A must conform to, and be tested by, constitutional standards, not vice versa. The State contends that disparate sentences for codefendants do not violate equal protection, citing *State v. Turner*, 31 Wn. App. 843, 644 P.2d 1224, *review denied*, 97 Wn.2d 1029 (1982)).[3] However, *Turner* does not support this proposition. In *Turner*, the court stated that the test for determining whether a disparity in codefendants' sentences violates equal protection is "whether there is a rational basis for the differentiation." *Turner*, 31 Wn. App. at 847 (citing *State v. Bresolin*, 13 Wn. App. 386, 397, 534 P.2d 1394 (1975), *review denied*, 86 Wn.2d 1011 (1976)); *see also*

---

[2]Since the State seems to contend that the legislative enactment of a presumptive sentencing scheme bears on an equal protection claim, it relies heavily on a Minnesota case, *State v. Vazquez*, 330 N.W.2d 110 (Minn. 1983). However, in *Vazquez*, the two codefendants were rationally distinguishable since one, but not the other, negotiated a plea agreement. *Vazquez*, 330 N.W.2d at 112. Furthermore, there is other Minnesota authority under that state's sentencing scheme indicating that, where the court cannot distinguish between codefendants, equivalent sentences are required. *See State v. McClay*, 310 N.W.2d 683 (Minn. 1981). Moreover, we note that in neither *Vazquez* nor *McClay* did the court address whether the disparate sentences were violative of equal protection.

[3]The State also cites *State v. Hall*, 35 Wn. App. 302, 666 P.2d 930 (1983). We assume that this case was cited in error since it does not address equal protection considerations.

*State v. Portnoy,* 43 Wn. App. 455, 464–65, 718 P.2d 805 (1986). The court then went on to find a basis for distinguishing between the two codefendants in that the accomplice unlike the defendant, pleaded guilty and agreed to testify and pay restitution in exchange for the prosecutor's request for a lenient sentence. *Turner,* 31 Wn. App. at 847; *see also Portnoy,* 43 Wn. App. at 465 (defendant's conduct rationally could have been found to be more dangerous and deserving of prosecution than that of codefendant).

The evidence before the judge who sentenced Clinton was that both Clinton and Jones were involved in all three rape/burglary incidents, both pleaded guilty to all counts, and the State, pursuant to the respective plea agreements, recommended exceptional sentences in both cases. The State concedes in its appellate brief that "there is no real distinction between the roles of Clinton and Jones," and the court made no attempt to identify any distinctions between the two.[4] The fact that different judges sentenced them can hardly be said to provide a "rational basis" for the disparity in the sentences they received.

We remand for a new sentencing hearing at which full consideration should be given to any relevant distinctions between Jones and Clinton. Relevant distinctions need not pertain only to the codefendants' relative culpability or to the pleas to which they agreed, but may pertain to anything which provides a rational basis for the disparate sentences. *See Portnoy,* 43 Wn. App. at 464–65; *Turner,* 31 Wn. App. at 847; *Bresolin,* 13 Wn. App. at 397. If, after taking further evidence on this issue, the court imposes exceptional sentences rather than sentences within the standard sentence range, as Jones received, then the court should provide an explanation of what it finds to be the basis for the disparity. In light of our disposition of this issue, we need not address the claim of ineffective assistance of counsel, since the relief requested has been granted. However, we suggest

---

[4]We note, however, that the equal protection issue was not raised below.

that the trial court appoint new counsel for resentencing.

SCHOLFIELD, C.J., and RINGOLD, J., concur.