IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 83075-9-I |
| RICKY MARVIN ARNTSEN, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

COBURN, J. — Ricky Arntsen challenged his conviction for assault in the second degree because there was insufficient evidence of intent to cause actual apprehension and imminent fear of injury to support the conviction. In reviewing the only ground before it, the Washington Supreme Court reversed this court's granting of his personal restraint petition and remanded for us to address his remaining claims. Arntsen also claims that because no one testified as to the victim's middle name, which was included in the jury instructions, the evidence was insufficient to support that he assaulted the named victim. We disagree and deny his petition.

FACTS AND PROCEDURAL HISTORY

A jury convicted Arntsen of several crimes for three incidents which occurred over two days.[1] The subject of this petition involves the second incident that grew from

---

[1] The underlying facts are set out in this court's published opinion. See In re Pers. Restraint of Arntsen, 25 Wn. App. 2d 102, 522 P.3d 135 (2023), rev'd 2 Wn.3d 716, 543 P.3d

a road rage encounter in which he sped up and drove in front of Kim Koenig's car, blocking her from proceeding, then exited his car holding a rifle while wearing a face covering, and walking up to Koenig's driver's side window, before leaving the scene in his vehicle. In re Pers. Restraint of Arntsen, 25 Wn. App. 2d 102, 105-06, 522 P.3d 135 (2023) (Arntsen I), rev'd 2 Wn.3d 716, 543 P.3d 821 (2024). In relation to this incident, Arntsen was charged with felony harassment and assault in the second degree with a deadly weapon. At trial, the jury was instructed that to convict Arntsen of assault in the second degree, the State must prove beyond a reasonable doubt "(1) that on or about December 1, 2014, the defendant assaulted Kim Weyer Koenig with a deadly weapon; and (2) that this act occurred in the State of Washington." The jury found Arntsen not guilty as to felony harassment, but guilty as to assault in the second degree with a deadly weapon and guilty on all other counts not at issue in this petition.

Arntsen appealed and this court reversed a malicious mischief conviction but affirmed as to all other counts. The Washington Supreme Court denied review and the judgment and sentence became final in 2021. Arntsen filed a pro se motion for relief from judgment in superior court in 2021 "He challenged only the sufficiency of the evidence for the Koenig assault, arguing the State failed to prove that (1) Arntsen had the specific intent required for second degree assault, given that the testimony showed he did not point the gun at another person, (2) Koenig in fact experienced apprehension and imminent fear of bodily injury, and (3) the 'Kim Koenig' who testified was the same

---

821 (2024). Facts relating to the crimes other than the assault are undisputed and are drawn from the decision in Arntsen's direct appeal. State v. Arntsen, No. 76912-0-I, slip op. at 2-4 (Wash. Ct. App. Jan. 6, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/769120.pdf.

person as the 'Kim Weyer Koenig,' complaining witness. . . . Arntsen also argued the conviction violated equal protection because he, a Black man, was treated differently from armed white people who stormed the Washington Governor's Mansion following the riot at the United States Capitol on January 6, 2021." In re Pers. Restraint of Arntsen, 2 Wn.3d 716, 723, 543 P.3d 821 (2024) (Arntsen II).

The motion was transferred to this court for consideration as a timely PRP. CrR 7.8(c)(2). This court granted his petition and reversed his conviction for assault in the second degree holding that the evidence supporting the conviction was insufficient to prove the required specific intent. Arntsen I, 25 Wn. App. at 118. Because we reversed Arntsen's conviction, we did not reach his two remaining issues. The Washington Supreme Court reversed and remanded for this court to address the remaining issues raised by Arntsen. Arntsen II, 2 Wn.3d at 732. We do so now.

DISCUSSION

Law of the Case

Arntsen asserts that there was insufficient evidence to show that the victim named in the jury instructions, Kim Weyer Koenig, was the same person who testified, Kim Koenig. Arntsen asserts that because the State included the middle name, "Weyer" in the to convict instruction, it became an essential element the State had the burden to prove under the law of the case doctrine. And because the State did not prove the victim's middle name was "Weyer," the conviction should be reversed.

Washington's "law of the case" doctrine in this circumstance "derives from . . . common law," Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005), and "is an established doctrine with roots reaching back to the earliest days of statehood." State v.

Hickman, 135 Wn.2d 97, 101, 954 P.2d 900 (1998). In criminal cases, where additional elements are included in a jury instruction on the elements of the crime and not objected to, the State is required to prove those elements even if they are not included in the statute. State v. Johnson, 188 Wn.2d 742, 754, 399 P.3d 507 (2017). However, a jury may draw inferences from evidence, including indirect evidence, so long as those inferences are rationally related to the proven facts. State v. Jackson, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989). The jury may infer from one fact the existence of another essential to guilt, if reason and experience support the inference. Tot v. United States, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943).

In the instant case, the court instructed the jury that to convict Arntsen of assault in the second degree, the State must prove beyond a reasonable doubt "(1) that on or about December 1, 2014, the defendant assaulted Kim Weyer Koenig with a deadly weapon; and (2) that this act occurred in the State of Washington." Under the law of the case doctrine, the State was required to prove that the person Arntsen was accused of assaulting was Kim Weyer Koenig. In an unpublished case,[2] similar facts led this court to find that, despite the fact that there was no direct testimony as to a victim's middle name, there was sufficient evidence for a jury to conclude that the "Kali May Bleichner" named in the charging document was the "Kali Bleichner" described in testimony. State v. Gunkel-Rust, No. 31154-6-III, slip op. at 7 (Wash. Ct. App. May 5, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/311546.ord.pdf. In that case, the

---

[2] Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court, but unpublished opinions filed on or after March 1, 2013 may be cited as nonbinding authorities if this court finds it necessary for a reasoned decision. GR 14.1.

defendant was the subject of a restraining order and was charged with violating it. Id. at 10-11. Although the victim did not testify, the court found that a jury could reasonably infer that the victim described by witnesses was in fact the named victim. Id. at 11. The court explained that the name was uncommon, testimony described the victim as living in the same city as the person named in the charging documents, and that the two victims who testified to the encounter with the defendant both identified her, in addition to the inference that the Kali Bleichner the defendant would attempt to contact is likely the same one named in the protective order. Id. at 10-11.

In the instant case, there was sufficient evidence for the trier of fact to find that Kim Koenig was the same person identified in the instruction. Koenig testified that her name is "Kim Koenig." She also testified to details of the incident consistent with another witness at the scene. The evidence established that only one "Kim Koenig" experienced the incident at that location on that day. A jury could reasonably infer that the Kim Koenig who testified at trial was in fact the victim named in the to-convict instruction.

We conclude the evidence was sufficient to support a conviction for assault in the second degree with a deadly weapon.

<u>Equal Protection</u>

Arntsen next argues his prosecution for assault in the second degree violates his right to equal protection because he, a Black man, was prosecuted for conduct he argues is identical to that of white individuals who were not charged with any crime.

The Fourteenth Amendment to the United States Constitution prevents states from denying "to any person within its jurisdiction the equal protection of the laws." U.S.

5

CONST. amend. XIV, § 1. The Washington State Constitution similarly provides that "no law shall be passed granting to any citizen . . . privileges or immunities which upon the same terms shall not equally belong to all citizens. WASH. CONST. art. I, § 12. These provisions of the United States and Washington State constitutions are "substantially identical and subject to the same analysis." State v. Osman, 157 Wn.2d 474, 483 n.11, 139 P.3d 334 (2006) (citing State v. Shawn P., 122 Wn.2d 553, 559-60, 859 P.2d 1220 (1993)).

Before evaluating an equal protection claim, the court must determine whether the individual claiming a violation is "similarly situated" with other persons. Id. at 484 (citing State v. Handley, 115 Wn.2d 275, 289, 796 P.2d 1266 (1990)). Although equal protection does not require that the State treat all persons identically, any classification must be relevant to the purpose for the disparate treatment. Id. (citing In re Det. of Thorrell, 149 Wn.2d 724, 745, 72 P.3d 708 (2003)). As a threshold requirement, an equal protection claim must establish that the defendant "received disparate treatment because of membership in a class of similarly situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." Id. at 484.

Arntsen bases his argument entirely on newspaper articles he submitted with his petition. Arntsen contends that he is "similarly situated" to the largely white and "presumably middle class" individuals who were not arrested or charged after they broke through fencing and entered the property of the Washington State governor's mansion while armed following the January 6, 2021 insurrection at the United States Capitol. He argues this group's conduct of "openly brandishing guns and high-powered assault rifles" was identical to the conduct underpinning his own prosecution for assault

6

in the second degree with a deadly weapon.  Arntsen claims that racial discrimination led to the disparity in charging.  However, this group and Arntsen are not similarly situated.

Arntsen's circumstance, which involved criminal acts before and during the road rage incident, was completely different than those who breached security fencing and protested five years later outside the Governor's mansion in an off-shoot of the "Stop the Steal" rally occurring in Washington, D.C.

Because Arntsen has failed to establish a class of "similarly situated" individuals, Arntsen has not met the threshold for a valid equal protection claim.

Even if Arntsen was able to establish such a class, the Washington State Supreme Court has held that the "failure to prosecute all other possible violators of the law is not, per se, contrary to the Equal Protection clause of the Fourteenth Amendment, United States Constitution, or of Article 1, § 12 of the Washington Constitution."  State v. Jacobsen, 78 Wn.2d 491, 499, 477 P.2d 1 (1970) (collecting cases).  A "prosecutor's selective application of a criminal statute . . . does not offend against due process, nor deprive a defendant of equal protection of the law in the absence of proof the choice was made without reasonable justification or was motivated by a design to intentionally and purposefully discriminate against a particular defendant or class."  State v. Thomas, 16 Wn. App. 1, 15-16, 553 P.2d 1357 (1976) (citing Oyler v. Boles, 368 U.S. 448, 456, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962)).  Put simply, Arntsen would have to show "deliberate or purposeful discrimination based upon an unjustifiable standard such as race" in order to make an equal protection claim.  State v. Gettman, 56 Wn. App. 51, 56, 782 P.2d 216 (1989) (citing Oyler v. Boles, 368 U.S. 448, 456, 82

S. Ct. 501, 7 L. Ed. 2d 446 (1962)).  Arntsen offers no evidence that the prosecutor in this case acted without reasonable justification or intentionally and purposefully discriminated against him in the enforcement of the law.  See Jacobsen, 78 Wn.2d at 498-99.

We conclude that Arntsen has not established a valid equal protection claim to warrant further review.

We deny his petition.

_____
Coburn, J.

WE CONCUR:

_____        _____
Hazelrigg, ACJ                                              Mann, J.