[No. 17242-5-I. Division One. June 1, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. SAM
F. BALKIN, *Appellant.*

*Dori Jones* of *Washington Appellate Defender Association,* for appellant.

2

*David S. McEachran, Prosecuting Attorney,* for respondent.

WEBSTER, J.—Appellant Sam Balkin appeals from a judgment and sentence of statutory rape in the third degree. RCW 9A.44.090. He contends that the trial court erred by requiring counsel to reveal a privileged document and by considering the privileged information in sentencing. We affirm.

## FACTS

On September 15, 1983, Sam Balkin was charged by information with one count of statutory rape in the third degree, one count of promoting prostitution in the second degree, and one count of attempted statutory rape in the third degree. Each of these charges involved unlawful sexual acts between Balkin and young males. The prosecution dismissed the last two charges in exchange for a plea of guilty to the charge of statutory rape in the third degree. In addition, the prosecution agreed to recommend a 5-year deferred sentence upon Balkin's meeting several conditions, one of which was completion of a counseling program at Northwest Treatment Associates.

The prosecutor and counsel for the defense jointly recommended to the court that Balkin be placed in the sexual offender program at Northwest Treatment Associates, which was an outpatient program. However, the court expressed concern at allowing Balkin to be released from custody and to be seen on an outpatient basis. Defense counsel then requested a presentence report. The court continued sentencing pending receipt of the report and released Balkin on $10,000 bond.

On December 15, 1983, Northwest Treatment Associates completed an evaluation of Balkin which stated that he was an "exceedingly poor candidate for outpatient treatment". When the parties appeared for sentencing, defense counsel stated that he would like to treat the evaluation as privileged. The court replied, "I suggest if you want to treat it as

a confidential statement, you can go ahead and treat it as such, but I would like a coapy [*sic*]." Defense counsel then provided the court with a copy of the report, but requested permission to continue the sentencing pending receipt of a second psychiatric evaluation. The court agreed to continue the sentencing provided that Balkin remain in custody pending the evaluation. The court scheduled a hearing for the following day in which the defendant would either be sentenced or be put in custody pending further evaluation.

The next day, January 27, 1984, Balkin failed to appear for the hearing. A bench warrant was issued for his arrest. Over a year later, in June 1985, Balkin was arrested in Colorado for alleged sexual offenses involving young males. He was then returned to Washington where he appeared for sentencing on August 15, 1985.

Based on the December 1983 Northwest Treatment Associates evaluation, the prosecutor recommended that Balkin be committed to the sex offender program at Western State Hospital. However, the defense counsel presented a report from Dr. John Morris that proposed outpatient treatment and a monthly polygraph test. The court's oral decision follows:

> THE COURT: I've gone over the reports thoroughly and I think you should know that I'm not without understanding as much as somebody outside this lifestyle could have. I thought Dr. Morris' report was very well done and is probably as close to the truth as anybody outside this situation can get.
>
> If this was your first contact with the criminal justice system, I would have no trouble going along with the recommendation. But in light of the history in failure to comply and a real lack of insight in the difficulty, I feel I have no alternative but to commit you to the Department of Institutions. I don't imagine you will be there long and we talk about rehabilitation but the real essence is there's been an offense to the community and I feel the Court is under an obligation to the community to exact a penalty and I'm hoping when you get out you put yourself voluntarily in the hands of somebody like Dr. Morris.
>
> This isn't for the purpose of rehabilitation, this is for

the purpose of punishment and I think until it comes crashing down on you, Mr. Balkin, you are at risk in the community at least as we perceive it. You're not going to change, I don't think, and unless you do, there are just going to be repeated trips down there. I don't say that unkindly to you; I think you're just going to have to make a decision that the community, for whatever reason, is simply not going to tolerate the conduct. So, as I say, I don't say that unkindly to you. Your lifestyle is your own as long as you don't invade with what we consider to be improper conduct, but this has and this is punishment and that will be the decision for it.

The court then sentenced Balkin to a maximum of 5 years in prison. This appeal followed. Balkin challenges the court's consideration of the Northwest Treatment Center evaluation in his sentencing.

### STANDARD OF REVIEW FOR SENTENCING

In determining the proper sentence, a trial court is vested with broad discretion and "'can make whatever investigation [it] deems necessary or desirable.'" *State v. Russell,* 31 Wn. App. 646, 648, 644 P.2d 704 (1982) (quoting *State v. Dainard,* 85 Wn.2d 624, 626, 537 P.2d 760 (1975)). However, the court may not conduct its own personal investigation of the defendant and should avoid receiving ex parte statements concerning the defendant. *State v. Romano,* 34 Wn. App. 567, 568–69, 662 P.2d 406 (1983). Essential to the judge's determination of an appropriate sentence is the possession of the fullest possible information concerning the defendant's life and characteristics. *Williams v. New York,* 337 U.S. 241, 247, 93 L. Ed. 1337, 69 S. Ct. 1079, *reh'g denied,* 337 U.S. 961 (1949). The sentencing judge should impose a sentence based upon reliable facts that have some basis on the record, and the defendant should have an opportunity to demonstrate that the information relied upon is inaccurate or incomplete. *State v. Giebler,* 22 Wn. App. 640, 644, 591 P.2d 465, *review denied,* 92 Wn.2d 1013 (1979).

COMMUNICATIONS BETWEEN A DEFENDANT
AND A DEFENSE PSYCHIATRIST

RCW 5.60.060(2) states:

Who are disqualified—Privileged communications. . . .
(2) An attorney or counselor shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment.

The attorney–client privilege extends to communications between a defendant and a defense psychiatrist. *State v. Jones*, 99 Wn.2d 735, 749, 664 P.2d 1216 (1983). This protection also applies to the sentencing stage. ER 1101(c)(3). However, the privilege is not absolute. Because the privilege may result in the exclusion of evidence that is otherwise relevant and material, contrary to the philosophy that justice can be achieved only with the fullest disclosure of the facts, the privilege must be strictly limited to the purpose for which it exists. *Dike v. Dike*, 75 Wn.2d 1, 11, 448 P.2d 490 (1968).

WAIVER

When considering whether the privilege has been waived, the court must consider the elements of implied intention, fairness, and consistency. 8 J. Wigmore, *Evidence* § 2327 (1961). "Its ultimate application requires a balancing of the benefits of the privilege against the public interest of a full revelation of all the facts." *In re Henderson*, 29 Wn. App. 748, 753, 630 P.2d 944 (1981). *See State v. Jones, supra* (privilege waived when the defense of not guilty by reason of insanity raised because full disclosure of evidence relevant to insanity held to outweigh benefits of the privilege); *cf. In re Henderson, supra* (psychologist–client privilege waived when mother submits to two examinations by psychologists for purpose of providing court and Department of Vocational Rehabilitation information about her fitness as a mother); *In re Siegfried*, 42 Wn. App. 21, 708 P.2d 402 (1985) (psychologist–client privilege waived when mother

agrees with Child Protective Services caseworker to seek counseling).

When Balkin bargained for a deferred sentence based upon his acceptance in the Northwest Treatment Associates program, he waived the privilege to keep the report confidential. His case is comparable to that of a person pleading not guilty by reason of insanity. *State v. Jones, supra.* Implicit in each of these situations is the defendant's consent to reveal results of psychiatric testing. Moreover, in each instance, the public interest served by the court's knowledge of every aspect of the defendant's personality and the prognosis for his recovery is outweighed by the benefits of the privilege.

Here, a well reasoned decision either to treat Balkin on an outpatient basis, to confine him while he was treated, or to incarcerate him for reasons of punishment could only be made by the sentencing judge with knowledge of the probable results of that decision. The trial judge determined Balkin's sentence based upon a full range of information: the Northwest Treatment Associates report, Dr. John Morris's report, Balkin's criminal history prior to the trial, and Balkin's recent arrest on similar charges after absconding from his sentencing hearing. In addition, by considering Dr. John Morris's report in rebuttal to the Northwest Treatment Associates report, the court assured fairness to Balkin.

Affirmed.

WILLIAMS and COLEMAN, JJ., concur.

Review denied by Supreme Court September 1, 1987.