JUSTICE NELSON
concurs.
¶36 I concur as to Issue 1.1 concur as to Issue 2, but write separately to express my concern about the State’s argument and the trial court’s approach in this case.
¶37 I begin by noting that Usrey did not allege ineffective assistance of counsel in this case. He objected to his counsel testifying against him at the hearing on his motion to withdraw his guilty plea on the basis of his attorney-client privilege. The State argued that Usrey waived this privilege by filing a motion to withdraw his guilty plea. While this Court avoids the State’s argument and the problem of Usrey[1] s attorney testifying against his client, I believe that the trial court erred, nonetheless, in ordering Halvorson to testify.
¶38 Under the State’s view, if a criminal defendant moves to withdraw his guilty plea, by implication, he waives his attorney-client privilege. The defendant’s attorney can voluntarily testify or can be compelled to testify and provide the prosecution privileged, confidential communications, and advice, to be used against defense counsel’s client. I cannot agree with this approach.
¶39 The attorney-client privilege is provided for by statute as follows:
Attorney-client privilege. (1) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment.
Section 26-1-803, MCA. The law is well established that Tajbsent a voluntary waiver or an exception, the privilege applies to all communications from the client to the attorney and to all advice given to the client by the attorney in the course of the professional relationship.” Palmer by Diacon v. Farmers Ins., 261 Mont. 91, 108-09, 861 P.2d 895, 906 (1993) (citing Kuiper v. Dist. Ct. of the Eighth Judicial Dist., 193 Mont. 452, 461, 632 P.2d 694, 699 (1981)); see also §26-1-803, MCA.
¶40 A criminal defendant may waive the attorney-client privilege. However,
[wjaiver is defined as the intentional or voluntary relinquishment of a known right or conduct which implies relinquishment of a known right. Kuiper v. District Court (1981), 632 P.2d 694, 698, 38 *350 St. Rep. 1288. The burden of establishing waiver of the privilege is on the party seeking to overcome the privilege. Miller v. Dis. Ct. City and Cty. of Denver (Colo. 1987), 737 P.2d 834, 838. Two elements must be considered when a court reviews the waiver of an attorney-client privilege: (1) the element of a client’s implied intention and (2) the element of fairness and consistency. See, 8 Wigmore, Evidence §2327 at 636; State v. Balkin (1987), 48 Wash. App. 1, 737 P.2d 1035, 1037.
An implied waiver must be supported by evidence showing that defendant, by words or by conduct, has impliedly forsaken his privilege of confidentiality with respect to the communication in question. Miller [], 737 P.2d at 838.
State v. Statczar, 228 Mont. 446, 452-53, 743 P.2d 606, 610-11 (1987).
¶41 The State’s argument and the trial court’s approach turn Statczar on its head. In that case, this Court reversed the defendant’s conviction when an attorney testified against his former client. We held, among other things, that the State presented no evidence that Statczar intended to waive his right not to divulge his privileged information, and that fairness and consistency coupled with the lack of evidence that defendant intended to waive the privilege required reversal of defendant’s conviction. Statczar, 228 Mont. at 453, 743 P.2d at 611.
¶42 Statczar set forth a two-part test on which to gauge whether the defendant had impliedly waived his attorney-client privilege. First, there must be evidence showing that the defendant by words or conduct impliedly renounced his privilege of confidentiality with respect to the communication in question. And, second, the waiver must be consistent with concerns of consistency and fairness. Statczar, 228 Mont. at 453, 743 P.2d at 610-11 (citations omitted). With regard to this second prong, we took into consideration that Statczar had no prior contact with the judicial system; that his mental capacity was questionable;[1] that he was unfamiliar with courtroom procedure; and that it was inherently unfair to require him to object to his attorney’s testimony to prevent his statements from being used against him. Statczar, 228 Mont. at 453, 743 P.2d at 611.
¶43 Here, Usrey was not asked if he waived his privilege. Indeed, the record reflects that it was not his intent to do so4ie objected to his attorney using his privileged communications against him. Furthermore, Usrey had an IQ of 71-even lower than Statczar’s IQ of *351 75. Dr. Tim Casey, the psychologist referred to in the Opinion, ¶ 9, testified that Usrey was functioning in the borderline range; that he had a “markedly sub-average” ability to form concepts and deal with words; and that he had shortcomings with his auditory memory and visual alertness. As the Court itself observes, Usrey had only limited cognitive and academic abilities; he could only read at a second-grade level; and to fully understand the plea agreement, someone would have to verbally communicate its details to him. Opinion, ¶ 9.
¶44 It was the State’s burden to show waiver. Statczar, 228 Mont. at 452, 743 P.2d at 610. The State claimed only that the former public defender had a waiver signed by Usrey-this purported written waiver was never placed in evidence, however. Moreover, the attorney testified that the waiver was limited, providing authorization for disclosure to Usrey’s current counsel. Notwithstanding, the court summarily overruled Usrey’s objection. The record in this case is devoid of evidence that Usrey, by his words or conduct, impliedly intended to waive his attorney-client privilege. The evidence is directly contrary. And, considerations of consistency and fairness are totally against any notion of waiver. The State failed in its burden to prove either prong of the Statczar test. Usrey did not expressly or impliedly waive his attorney-client privilege.
¶45 While the instant case is not a post-conviction-relief proceeding, we adopted a petition/order procedure in Petition of Gillham, 216 Mont. 279, 281, 704 P.2d 1019, 1020, permitting defense counsel to testify against his client in a post-conviction-relief proceeding where the defendant alleged ineffective assistance of counsel. We stated in Gillham that in such a situation, ‘the Attorney General shall first apply to this Court for an order preserving such responding attorney from charges of discipline or malpractice for revealing necessary confidential information from such convicted person.” Gillham, 216 Mont. at 282, 704 P.2d at 1021. However, we also stated that this applied to “petitions for relief of any kind ... based in whole or in part on grounds of ineffective assistance of counsel...” Gillham, 216 Mont. at 282, 704 P.2d at 1021 (emphasis added). This is incredibly broad language, and that, along with the fact that the attorney-client privilege is protected by statute without such an exception, leads me to now conclude that our decision in Gillham was a mistake.
*352 ¶46 Indeed, in a form of'function creep”[2] the Gillham decision is now being cited for and being used in ways not originally contemplated. Gillham has been, for years, limited to post conviction/ineffective assistance of counsel claims.[3] Here, however, the State cites Gillham as authority in a motion to withdraw a guilty plea case. And, in State v. Patrick, 2009 MT 220N, Supreme Court Cause No. DA 08-0197, the Gillham procedure was utilized in a judge-disqualification claim. It appears that Gillham is on the slippery slope. The State is now promoting and using Gillham as a convenient and comprehensive tool for breaching the defendant’s attorney-client privilege when doing so will aid it in the prosecution of the State’s case-and, unfortunately, the trial courts and defense counsel are allowing this to happen. I cannot agree with this approach.
¶47 Gillham effectively destroys the attorney-client privilege in criminal cases. Gillham judicially repeals §26-1-803, MCA, in which the Legislature provided that 'ta]n attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given to the client in the course of professional employment [emphasis added].”To the contrary, Gillham decrees that in criminal cases an attorney can, without the consent of his client, be examined as to any communication made to him or his advice given to the client in the course of professional employment as long as there is any kind of claim based in whole or in part on the grounds of ineffective assistance of counsel. Moreover, Gillham effectively annuls Montana Rule of Professional Conduct 1.6, regarding confidentiality, and deals the fundamental right to counsel guaranteed under the Fifth and Sixth Amendments to the United State’s Constitution and Article II, Section 24 of the Montana Constitution, a monstrous wound.
¶48 The fundamental purpose of the attorney-client privilege is:
*353 to enable the attorney to provide the best possible legal advice and encourage clients to act within the law. The privilege furthers this purpose by freeing clients from the consequences or the apprehension of disclosing confidential information, thus encouraging them to be open and forthright with their attorneys.
Palmer, 261 Mont. at 106, 861 P.2d at 904 (citations omitted). Additionally, the attorney-client privilege fosters the attorney-client relationship by ensuring that attorneys are free to give accurate and candid advice without fear that the advice will later be used against the client. Palmer, 261 Mont. at 107, 861 P.2d at 904-05.
¶49 The State’s argument and the trial court’s approach in this case abrogate all of these important purposes and policies. I cannot agree that the attorney-client privilege should be discarded so cavalierly.
¶50 With those caveats as to Issue 2,1 otherwise concur in the Court’s Opinion.

 Statczar had an IQ of 75 and was functioning at a “borderline level.” Statczar, 228 Mont. at 451, 743 P.2d at 609.

 ‘Function creep” refers to the “expansion of a program, system or technology into areas for which it was not originally intended,” and the “nearly impossible to stop ... slippery slope toward ever broader law enforcement use” of new surveillance technology once it is installed. Clifford S. Fishman & Ann T. McKenna, Wiretapping and Eavesdropping §31:20 (April 2009). Function creep is precisely what is happening with the Gillham procedure.

 See Heath v. State, 2009 MT 7, 348 Mont. 361, 202 P.3d 118; Marble v. State, 2007 MT 98, 337 Mont. 99, 169 P.3d 1148; Watson v. State, 2004 MT 308N, 325 Mont. 403, 106 P.3d 132; Bone v. State, 284 Mont. 293, 944 P.2d 734 (1997); State v. Baker, 272 Mont. 273, 901 P.2d 54 (1995).