IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38778-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LONNIE KAYE ENGLAND, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — We answer two distinct questions that overlap for purposes of this appeal.  First, when the sentencing court must sentence in accordance with the law in effect at the time of the offense and when the offense could have occurred at a time during which version 1 of the law applied or version 2 of the law applied, but we do not know for sure what date applies, do we apply version 1, which is the earlier and milder version, or version 2 to the sentencing?  Second, does an offender acknowledge that he committed a crime after September 1, 2001 when he admits that he committed the crime sometime between January 1, 1998 and December 31, 2001?  The answer to the first question is version 1.  We answer the second question in the negative.  We base the answer to question two more on communication logic than the law.  Based on both of our

answers, we hold that appellant Lonnie England's sentencing court erred when sentencing England under a sentencing statute effective after September 1, 2001 when the charging period extended from January 1998 to December 2001.

## FACTS

Because this prosecution never went to trial, we garner the scant underlying facts from three law enforcement officer affidavits. In 2017, the Wenatchee Police Department investigated Lonnie England for sex offenses against two former minors. We give the minors pseudonyms. According to a law enforcement officer affidavit, the first victim, Jane, born in 1991, reported that England sexually abused her between 1998-2000. Also, according to the police affidavit, a second victim, Arthur, also a pseudonym, born also in 1991, reported England sexually molested him during the same three-year window of time.

## PROCEDURE

The details underlying this prosecution impact the question on appeal as much as the underlying facts. On September 27, 2017, the State of Washington filed an information charging Lonnie England with seven sex crimes for acts committed against Jane and Arthur. The information listed all charged crimes as occurring between January 1, 1998 and December 31, 2000. Because the nature of some of the charges might preclude anonymity for the children, we do not detail each of the counts.

On January 23, 2020, the State of Washington filed a first amended information. The first amended information added allegations of three sentencing aggravating factors. The State changed the victim on one count to the other child. The amended information listed all six charged crimes as occurring between January 1, 1998 and December 31, 2000, the same charging period advanced in the initial information.

On March 8, 2021, the State of Washington filed a second amended information. This final information reduced the various charges against Lonnie England to two counts of child molestation in the first degree. One count alleged Jane to be the victim. The second count alleged Arthur to be the victim. The new information removed the sentencing aggravators. The second amended information also expanded the charging period for both counts to January 1, 1998 to December 31, 2001. We do not know the circumstances behind expanding the charging period. None of the three law enforcement officer affidavits recorded a crime occurring in 2001.

On March 8, 2021, the same date as the second amended information's filing, Lonnie England pled guilty to the two charges of first degree child molestation. During the plea colloquy, England informed the trial court he understood that by pleading guilty he forfeited the right to trial.

We closely examine the eleven-page "statement of defendant on plea of guilty to sex offense" form that Lonnie England signed, on March 8, 2021, pursuant to his guilty plea. On page 2, the State inserted in the standard plea form language a listing of the

3

standard range of actual confinement for both counts to be 67-89 months, with a

maximum term of lifetime confinement. The inserted language also mentioned a lifetime

of community custody after any release from incarceration.

On page 4 of the plea form, the form contained standard language concerning the

differences in sex offense sentencing on whether the accused committed the crime before

September 1, 2001 or thereafter. The lengthy paragraphs read:

> For sex offenses committed prior to September 1, 2001: In addition
> to sentencing me to confinement, the judge may order me to serve up to one
> year of community custody if the total period of confinement ordered is not
> more than 12 months. If the period of confinement is over one year, the
> judge will sentence me to community custody for 36 months. During the
> period of community custody to which I am sentenced, I will be under the
> supervision of the Department of Corrections, and I will have restrictions
> and requirements placed upon me.
> For sex offenses committed on or after September 1, 2001: *(i)*
> Sentencing under RCW 9.94A.507: If this offense is any of the offenses
> listed in subsections *(aa)* or *(bb)*, below, the judge will impose a maximum
> term of confinement consisting of the statutory maximum sentence of the
> offense and a minimum term of confinement either within the standard
> range for the offense or outside the standard range if an exceptional
> sentence is appropriate. . . . In addition to the period of confinement, I will
> be sentenced to community custody for any period of time I am released
> from total confinement before the expiration of the maximum sentence.

Clerk's Papers (CP) at 142. Table (*aa*) listed first degree child molestation as an offense

qualifying Lonnie England for sentencing under RCW 9.94A.507.

On page 5 of the statement on plea of guilty, the State disclosed the sentencing

recommendation it would deliver to the sentencing court. The State would recommend

eighty-nine months in prison for each count, a lifetime sex offender registration, and

lifetime community custody. The prosecution agreed to recommend that the sentences run concurrently.

On page 10 of the plea form, Lonnie England pled guilty to both counts of child molestation as charged "in the *Second Amended* Information" and affirmed he had "received a copy of that Information." CP at 148. As for the factual admission attending the guilty plea, the statement on plea declares:

> The judge has asked me to state what I did in my own words that makes me guilty of this crime, including enhancements and domestic violence relationships if they apply. This is my statement:
> Count 1: On or between January 1, 1998 and December 31, 2001, I had sexual contact for the purpose of sexual gratification with [Jane].
> Count 2: On or between January 1, 1998 and December 31, 2000, I had sexual contact for the purpose of sexual gratification with [Arthur].

CP at 148 (boldface omitted). We note that, while the admission to count 1 extended to December 31, *2001*, the admission to count 2 extended only to December 31, *2000*.

At Lonnie England's sentencing hearing, the following colloquy occurred between the sentencing court and England:

> THE COURT: Okay. And do you understand that the Court will impose a maximum term of confinement within the range—no, minimum term of confinement within the range and the maximum term of confinement consisting of the statutory maximums of this offense—do you understand that?—and that the minimum term can be imposed—can be increased by the Indeterminate Sentence Review Board if the board determines by a preponderance of the evidence that it's more likely than not that you will commit sex offenses if released from custody?
> THE DEFENDANT: Yes, ma'am. I understand.
> THE COURT: So that even if the Court sentences you to the maximum of 89 months, the Indeterminate Sentence Review Board could

5

increase that.

      THE DEFENDANT: Okay.

      THE COURT: Do you understand that?

      THE DEFENDANT: Yes, ma'am.

Report of Proceedings (RP) (Mar. 8, 2021) at 233-34. The colloquy continued later:

      THE COURT: Okay. All right. Well, I want to—I want to make it clear that you have fully discussed your case with your attorney; is that correct?

      THE DEFENDANT: Yes.

      THE COURT: And do you have any other questions for him at this time?

      THE DEFENDANT: No. We went through it line by line and I understand it and I—and the questions that I had he answered truthfully and faithfully.

      THE COURT: Okay. And with all those things in mind what we just discussed, do you still wish to plead guilty?

      THE DEFENDANT: Yes, ma'am.

      THE COURT: Okay. When you reviewed this plea form, did you read it or did Mr. Yedinak [defense counsel] read it to you?

      THE DEFENDANT: We went back and forth. So if I had a question on it, he explained it to me.

      THE COURT: Okay. But did you read the full—the full agreement?

      THE DEFENDANT: Yes, ma'am.

RP (Mar. 8, 2021) at 241-42.

After an extensive colloquy, the sentencing court took Lonnie England's guilty plea:

      All right. Sir, you're charged in the Second Amended Information with Count I, Child Molestation in the First Degree, alleging this happened on or between January 1st, 1998, and December 31st, 2001, and the victim in this case being [Jane]. The maximum penalty for this Class A felony crime is life in prison and/or a $50,000 fine. How do you plead, guilty or not guilty?

      THE DEFENDANT: Guilty.

THE COURT: As to Count II, Child Molestation in the First Degree, the allegation is that this occurred on or between January 1st, 1998, and December 31st, 2001. The victim in this case and this charge is [Arthur]. And, again, the maximum penalty is life in prison and/or a $50,000 fine. How do you plead?

THE DEFENDANT: Guilty.

THE COURT: All right. And in your plea form, it gives your statement about what you did. And it says in paragraph 11, "Count I: On or between January 1st, 1998, and December 31st, 2001, I had sexual contact for the purpose of sexual gratification with [Jane]." "Count II: On or between January 1st, 1998, and December 31st, 2000, I had sexual contact for the purpose of sexual gratification with [Arthur]." These incidents occurred in Chelan County, Washington. Is that what happened here?

THE DEFENDANT: Yes.

RP (Mar. 8, 2021) at 243-45. Following this factual recitation, the sentencing court indicated it had reviewed police reports and inquired whether the State had any information to add. The State's attorney replied, "No, your Honor." RP (Mar. 8, 2021) at 245.

In allocution, Lonnie England denied the criminal allegations. England protested:

THE DEFENDANT: I'm just scared shitless. I'm sorry. But I didn't do any of this. I can only hope I can get something down the road to—to show the truth. But I didn't do any of this. It was a plea bargain. There was no choice in the matter. It was life—life or a plea bargain. And I've been made this monster.

THE COURT: Can you stand up, sir?

THE DEFENDANT: I'm sorry. But I've been made this monster, and I haven't done any of this stuff. But we know who has. That's just the biggest question that I gave him was how do you prove something that you didn't do? So you find out if something actually did happen and we did. And we found who did it. And it was a chance to be able to do that.

During the readiness hearing, my fair trial was wiped out by all the suppression of the defense. I had no fair trial to go to. I only had a choice of an Alford plea with no defense or the plea deal. I've admitted to

7

something that I didn't do. And I admitted it to you, your Honor, and in a—and in a declaration that I lied to you. I know the rules coming here. You're supposed to tell the truth, the whole truth, nothing but the truth, all that stuff. But I didn't do this. And I'm not a monster. I don't want to lose my family or be away from my family.

THE COURT: Okay. If you could stand please, continue standing.

THE DEFENDANT: I'm sorry.

THE COURT: Put those back in your ears so you can hear. Okay? Okay. So, Mr. England, you pled guilty. You admitted to doing this. This was not an Alford plea.

THE DEFENDANT: I know.

RP (May 5, 2021) at 285-87.

Lonnie England's felony judgment and sentence listed the date of both convictions as extending between January 1, 1998 to December 31, 2001. The sentencing court imposed a concurrent sentence on both counts with a minimum term of confinement of 89 months and a maximum term of lifetime confinement. The trial court sentenced England to community custody "for any period of time the defendant is released from total confinement before the expiration of the statutory maximum." CP at 203.

## LAW AND ANALYSIS

On appeal, Lonnie England does not seek to withdraw his guilty plea. He instead challenges his sentence. England assigns error to the trial court's imposition of sentences for both convictions because the superior court based the sentences on a sentencing statute that became effective four months before the end of the charging period for one conviction and after the charging period for the second conviction. He contends that no facts support a finding by the sentencing court that a crime occurred during the effective

8

date of the statute for either conviction, particularly since the witnesses stated, according to the police reports, the molestation occurred from 1998 to 2000.

We note that, contrary to Lonnie England's contention, the second amended charging information alleged that both crimes occurred as late as the end of 2001. In his statement on plea of guilty, England pled guilty to both counts of child molestation as charged in the second amended information, and he affirmed he had received a copy of that information. Also in the plea statement, England acknowledged that he would receive an indeterminate sentence, under which he might spend the rest of his life in prison and, if and when released, he would undergo community custody supervision for the rest of his life. During the colloquy with the sentencing court, England also admitted he faced this interminable sentence. In the plea statement's factual admission, England declared that, for purposes of count one, he engaged in sexual contact with Jane between January 1, 1998 and December 31, 2001. Oddly, for count two, the statement declares, consistent with the police affidavits but contradictory to the information, that the sexual contact occurred only between January 1, 1998 and December 31, 2000. Then, when the sentencing court accepted the guilty plea, she asked if Lonnie England committed both crimes between January 1, 1998 and December 31, 2001. Finally, after England pled guilty to both charges, the court read the section from the plea statement that limits the charging period for count two to the years 1998-2000. No one then apparently caught the discrepancy that we must now encounter.

The State recasts Lonnie England's argument as wishing relief because he lacked a choice when pleading guilty and because he failed to understand the nature and consequences of his plea. We disagree with this characterization of England's contention. Based on England's allocution, we recognize that, like others who plead guilty to avoid a tougher sentence if convicted after a trial regardless of guilt or innocence, he deemed he lacked a viable choice. But he does not complain on appeal about the lack of options. He also does not argue he did not know the consequences to his plea. He contends that the law does not allow the sentencing court to base a sentence on facts not found in the record, let alone untrue facts, regardless of what he understood.

The State may also complain that Lonnie England seeks to breach his plea agreement. But the State does not brief this implied contention. So, we do not explore any alleged breach. We deem a contention not briefed to be waived. *State v. Ford*, 137 Wn.2d 472, 477 n.1, 973 P.2d 452 (1999).

We first review the statutory change prompting Lonnie England's challenge on appeal. Before September 1, 2001, all sexual offenders were sentenced to a determinate sentence. A determinate sentence declares with exactitude the number of months of confinement and community custody. Offenses committed between June 6, 1996 and September 1, 2001 also carried a requisite three years of community custody. Former RCW 9.94A.712.

In 2001, the Washington State Legislature implemented a new sentencing scheme covering offenders convicted of child molestation in the first degree. LAWS OF 2001, 2d Spec. Sess., ch. 12, § 303, *initially codified at* RCW 9.94A.712 (2001), *currently codified at* RCW 9.94A.507. The legal community alternatively labels the new system as a determinate-plus or an indeterminate system. The determinate-plus scheme applies to crimes committed on or after September 1, 2001. LAWS OF 2001, 2d Spec. Sess., ch. 12, § 505. A determinate plus scheme means the sentencing court imposes a minimum number of months of incarceration and then declares a maximum sentence of lifetime. In turn, the Indeterminate Sentencing Review Board will, after expiration of the minimum sentence, determine when to release the offender based on the board's assessment of the offender's rehabilitation. On release, the offender faces a lifetime of community custody.

In addition to the 2001 legislation expressly declaring that its terms only apply to crimes committed after September 1, 2001, a separate Washington statute dictates this effective date. RCW 9.94A.345 declares:

> [A]ny sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.

Pursuant to RCW 9.94A.345, Washington courts sentence under the version of the sentencing reform act in effect at the time of the offense. *State v. Jenks*, 197 Wn.2d 708, 714, 487 P.3d 482 (2021).

11

As a result of the effective date of the 2001 sentencing amendment, we must juggle some irreconcilable principles and some complimentary rules controlling sentencing. First, a reviewing court should correct an erroneous sentence regardless of the reason for the error. Second, due process demands that any facts, which influence the court's sentencing, be found in the record. Third, the offender deserves an opportunity to challenge facts utilized by the sentencing court when sentencing. Fourth, the offender should object to any objectionable or erroneous facts before the sentencing court renders a decision. Fifth, the offender should be bound by facts to which he acknowledges. We proceed to discuss these principles and analyze them in the context of the unique circumstances of Lonnie England's appeal.

Lonnie England did not spot, before the sentencing court, the discrepancy between the charging period and police reports about the years of the alleged crimes. Nor did he mention that the sentencing statute employed by the sentencing court took effect only after the expiration of a portion of the charging period. Nevertheless, in the context of sentencing, established case law holds that illegal or erroneous sentences may be challenged for the first time on appeal. *State v. Ford*, 137 Wn.2d 472, 477 (1999); *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996). This principle promotes sentences being in conformity and in compliance with existing sentencing statutes and avoids permitting widely varying sentences to stand for no reason other than the failure of

12

counsel to register a proper objection in the trial court. *State v. Ford*, 137 Wn.2d 472, 478 (1999).

Determinations regarding the severity of criminal sanctions are not to be rendered in a cursory fashion. *State v. Ford*, 137 Wn.2d 472, 484 (1999); *State v. Lopez*, 107 Wn. App. 270, 279, 27 P.3d 237 (2001), *aff'd*, 147 Wn.2d 515, 55 P.3d 609 (2002). This court has the power and duty to correct a sentencing error on its discovery even when the parties not only failed to object but agreed with the sentencing judge. *State v. Loux*, 69 Wn.2d 855, 858, 420 P.2d 693 (1966), *overruled in part by State v. Moen*, 129 Wn.2d 535 (1996). All decisions standing for this duty of correction entail the sentencing court rendering legal error or performing a miscalculation of an offender score, not employing factual error. Although one might argue that Lonnie England's sentencing court made a legal error by applying the wrong version of the sentencing statute for first degree child molestation, England's assignment of error emphasizes that the court factually erred when assuming he committed both crimes after September 1, 2001.

Characterizing Lonnie England's sentencing error as a factual mistake does not end any analysis. Sentencing courts require reliable facts and information. *State v. Ford*, 137 Wn.2d 472, 484 (1999); *State v. Lopez*, 107 Wn. App. 270, 279 (2001). In accordance with basic principles of due process, Washington courts demand that, in imposing a sentence, the facts relied on by the trial court have some basis in the record. *State v. Ford*, 137 Wn.2d 472, 482 (1999); *State v. Knippling*, 166 Wn.2d 93, 102, 206

13

P.3d 332 (2009); *State v. Woldegiorgis*, 53 Wn. App. 92, 94-95, 765 P.2d 920 (1988);

*State v. Balkin*, 48 Wn. App. 1, 4, 737 P.2d 1035 (1987); *State v. Russell*, 31 Wn. App.

646, 649-50, 644 P.2d 704 (1982); *State v. Giebler*, 22 Wn. App. 640, 644-45, 591 P.2d

465 (1979); *State v. Bresolin*, 13 Wn. App. 386, 396, 534 P.2d 1394 (1975). Any

extrinsic evidence must be part of the record when relied on by the sentencing court to

make a factual finding attending a guilty plea. *State v. Osborne*, 102 Wn.2d 87, 95, 684

P.2d 683 (1984). The State bears the burden of establishing such facts. *State v.*

*Mendoza*, 165 Wn.2d 913, 920, 205 P.3d 113 (2009); *State v. Chandler*, 158 Wn. App. 1,

5-6, 240 P.3d 159 (2010).

      RCW 9.94A.530(2) governs what facts the sentencing court may consider:

> In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is *admitted by the plea agreement*, or admitted, *acknowledged*, or proved in a trial or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence, except as otherwise specified in RCW 9.94A.537.

(Emphasis added.) The statute creates the "real facts" doctrine that limits a sentencing

court to consideration of facts that were acknowledged, proven, or pleaded to. *State v.*

*Houf*, 120 Wn.2d 327, 332, 841 P.2d 42 (1992). Under the statute, if not due process

considerations, the offender enjoys the opportunity to demonstrate that the information

relied on is inaccurate or incomplete. *State v. Ammons*, 105 Wn.2d 175, 185, 713 P.2d 719, 418 P.2d 796 (1986); *State v. Woldegiorgis*, 53 Wn. App. 92, 94-95 (1988); *State v. Balkin*, 48 Wn. App. 1, 4 (1987).

Still, information presented at sentencing without objection is deemed acknowledged by the defendant. *State v. Ford*, 137 Wn.2d 472, 483 (1999); *State v. Handley*, 115 Wn.2d 275, 283, 796 P.2d 1266 (1990); *State v. Burkins*, 94 Wn. App. 677, 697-98, 973 P.2d 15 (1999). The court can also rely on statements from the defendant in court. *State v. Handley*, 115 Wn.2d 275 (1990). Furthermore, RCW 9.94A.530(2) authorizes a sentencing court to rely on information produced by something less than the usual adversarial process. *State v. Handley*, 115 Wn.2d 275, 281 (1990); *State v. Herzog*, 112 Wn.2d 419, 430-31, 771 P.2d 739 (1989). A sentencing judge may consider facts not admissible at trial. *State v. Handley*, 115 Wn.2d 275, 281 (1990).

Lonnie England had a chance to object to a charging period of 1998 to the end of 2001. Instead, in both his written statement of plea and his oral plea at sentencing, he acknowledged a charging period of January 1, 1998 to December 31, 2001. If he had specifically stated that he committed the crimes between September 1, 2001 and December 31, 2001, we would likely affirm the sentences imposed, despite the police reports identifying the dates of the crime being sometime during the years 1998, 1999, and 2000. But England agreed to something else.

Lonnie England agreed that the two crimes occurred sometime between the beginning of 1998 and the end of 2001. This concession does not acknowledge that the crime occurred on or after September 1, 2001. Someone who recognizes that he committed a crime on July 4, 1998 could accurately state that the crime occurred between January 1, 1998 and December 31, 2001. Therefore, we rule that England did not acknowledge that he committed the two crimes after the effective date of indeterminate sentencing.

One might argue that Lonnie England should have identified the discrepancy to the sentencing court before pleading guilty or at least before the court announced the sentence. But the State carries the burden of showing facts supporting a sentence. The State could have, but did not, declare for the record the basis on which it amended the information to extend the charging period to December 31, 2001. The only underlying facts before the sentencing court and presented to this court on review establish the dates of the crimes as sometime between January 1, 1998 and December 31, 2000.

Our ruling follows some of the principles we mentioned earlier. The State carries the burden of proving any facts attended to the sentencing. Due process demands accurate facts employed during sentencing.

CrR 4.2(d) aids Lonnie England. Under CrR 4.2(d):

> The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

16

The factual basis requirement protects a defendant, who voluntarily pleads guilty with an understanding of the nature of the charge, but who does not realize that his conduct does not actually fall within the charge. *In re Personal Restraint of Crabtree*, 141 Wn.2d 577, 585, 9 P.3d 814 (2000).

Case law also benefits Lonnie England. The Supreme Court first grappled with the question posed by this appeal in *State v. Parker*, 132 Wn.2d 182, 937 P.2d 575 (1997). The State charged Larry Parker with child sex offenses that allegedly occurred between 1987 and 1991. Trial evidence demonstrated that Parker committed the acts at various times throughout the charging period. The verdict form did not ask the jury to identify the dates on which the defendant committed the respective crimes. In determining Parker's sentence, the trial court applied a statutory amendment passed during the fourth year of the charging period. The amendment significantly increased the standard range for Parker's convictions. The Supreme Court reversed Parker's sentence because the evidence presented at trial showed Parker committed some of the criminal acts before the increase in penalties and the trial court did not require the State to prove the acts occurred after the penalty increase. The court reasoned that any other outcome would violate the ex post facto clause of both the United States and Washington Constitutions.

The Supreme Court addressed a variant of Lonnie England's circumstances in *State v. Aho*, 137 Wn.2d 736, 975 P.2d 512 (1999). The State charged Fonua Aho with

child molestation during a time period between January 1981 and December 31, 1991.

The legislature, however, did not create the charged crime until 1988. A trial resulted in

a jury conviction for one count of first degree child molestation, but the verdict form did

not ask the jury to identify when the criminal act occurred. The Supreme Court observed

that the jury may have convicted Aho for an act occurring before the effective date of the

criminal statute. The Supreme Court reversed the conviction for child molestation.

Without ever citing to *State v. Parker*, the Supreme Court, in *State v. Aho*,

disagreed with the *Parker* view of justifying the holding in the ex post facto clause. The

ex post facto clause applies when the legislature enacts a law retrospectively altering the

definition of criminal conduct or increasing the punishment for a crime. The ex post

facto clause does not apply to retroactive judicial decisions. Therefore, the clause does

not address any confusion surrounding the sentence to impose because of an uncertainty

of the date of the crime. The court reframed the issue as a due process question. The

underlying concern remained the same, however. Both clauses abhor punishing one

without fair warning of the consequences of his or her action. The Supreme Court

concluded:

> Application of the statute under the facts here cannot be attributed to legislative action; the Legislature plainly and clearly provided that the statute does not apply to acts occurring before July 1988. Instead, in direct violation of this clear legislative mandate both the state and defense counsel permitted this matter to go forward despite the fact that the charging period, set forth in the jury instructions, included a substantial period of time before July 1988.

*State v. Aho*, 137 Wn.2d 736, 742 (1999).

*In re Personal Restraint of Crabtree*, 141 Wn.2d 577 (2000) represents the last excursion of the Supreme Court into this area of the law. The court held that the *Aho* rule did not bar Mark Crabtree's conviction when he pled guilty to committing sex offenses between June 1, 1988 and August 31, 1988 even though July 1, 1988 marked the effective date of the statute under which he was sentenced. In holding Crabtree's sentence conformed with due process, the high court expressly noted that extrinsic evidence demonstrated the acts occurred after July 1, 1988. The trial court must have known of the relevant dates, because the court appropriately sentenced Crabtree under the old scheme for a separate act of statutory rape that occurred in March of 1987. No intrinsic or extrinsic evidence establish a crime being committed by Lonnie England after September 1, 2001.

Lonnie England does not specify the exact remedy he seeks or he deems correct. The State does not enlighten the court as to what remedy we should direct in the event we reverse the sentences for the two convictions. We remand to the superior court to resentence England on both convictions under the sentencing scheme for first degree child molestation effective before September 1, 2001.

ADDITIONAL GROUNDS

Statute of Limitations

Lonnie England assigns five errors in a statement of additional grounds.  England first argues that his convictions violated the statute of limitations.  Because England could have been charged under the old statute when the legislature expanded the limitation period for child molestation prosecutions, we disagree.

To show entitlement to relief, Lonnie England must demonstrate that a controlling statute of limitations expired before his prosecution.  Once a statute of limitations period expires, the law bars a prosecution, but, if the legislature expands the period of limitation prior to the expiration of the original period, the State may commence prosecution at any time within the newly established period.  *State v. Hodgson*, 108 Wn.2d 662, 668, 740 P.2d 848 (1987).

Lonnie England contends that the statute of limitations in effect at the time he committed the crimes should control.  Under that statute, the statute of limitations would have expired in 2012, three years after both victims turned eighteen.  Former RCW 9A.04.080(1)(c) (1988).  But *Hodgson* rejects England's proposed test.

Based on the ages of the victims and considering the legislature's expansions of the limitation period for child molestation prosecutions, the State could validly prosecute Lonnie England when it filed the original information in 2017.  Both Arthur and Jane were born in 1991.

20

For privacy purposes, and to avoid any possible prejudice to Lonnie England, we analyze the statute of limitations as if both victims were born on January 1, 1991. Former RCW 9A.04.080(1)(c) (1988) limited a prosecution for child molestation to "[no] more than three years after the victim's eighteenth birthday or more than seven years after their commission, whichever is later." In 2009, the legislature changed the limitation period to allow prosecutions "up to the victim's twenty-eighth birthday." Former RCW 9A.04.080(1)(c) (2009). In 2009, both victims were eighteen years old, and so fell within the 1988 statute's allowance for prosecutions until three years after a victim's eighteenth birthday. The legislature again amended the statute in 2013 to permit prosecutions until a victim's thirtieth birthday. Former RCW 9A.04.080(1)(c) (2013). In 2013, both victims were twenty-two years old, younger than twenty-eight, so England remained prosecutable under the 2009 statute at the time of the amendment. When England was charged in 2017, the victims were twenty-six years old, younger than thirty.

Prosecutorial Misconduct

Lonnie England challenges evidence that the State might have offered at trial. England's arguments implicate facts not in the record. A statement of additional grounds must be limited to evidence available in the record. A personal restraint petition is the vehicle by which to introduce new facts or evidence for this court's consideration. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). In any case, by pleading guilty, England relieved the State of its duty to prove the charges against him beyond a

21

reasonable doubt to a jury of his peers. England's plea rendered the admissibility of evidence irrelevant.

## Due Process Errors

Lonnie England again advances various arguments implicating facts not available in the record. To the extent England cites to the record, his arguments are not cognizable and do not provide notice of the nature and occurrence of the alleged errors as required by RAP 10.10(c).

## Amendment of Information

Lonnie England argues that the expansion of the conviction date range in the second amended information prejudiced him. Ordinarily, the State may amend an information at any time prior to a verdict if such amendment does not prejudice the substantial rights of the defendant. CrR 2.1(d). Nevertheless, an unjustified delay in amending an information draws scrutiny if the delay prejudiced the defendant. *See State v. Michielli*, 132 Wn.2d 229, 244-46, 937 P.2d 587 (1997).

Lonnie England acknowledged that he reviewed the second amended information before pleading guilty. The amendment did not affect his substantial rights or prejudice his defense. England could have chosen not to plead guilty after reviewing the second amended information's change in charging date range. In his factual statement, England also could have specified a shorter time period in which the criminal acts occurred.

22

Advisement of Right to Appeal

Lonnie England argues that he was never given notice of his right to appeal at the sentencing hearing as required by CrR 7.2(b). A sentencing court must advise the defendant of the rights enumerated in CrR 7.2(b) "immediately after sentencing" and the advisement "shall be made a part of the record."

The transcript of Lonnie England's sentencing hearing does not show that the trial court bespoke an advisement of appeal rights. But England appealed. He fails to assert any prejudice resulting from the failure to give the advisement.

Ineffective Assistance of Counsel

Lonnie England argues that he received ineffective assistance of counsel during trial court proceedings and in plea bargaining. To the extent England argues facts and evidence outside the record, he is precluded from doing so and must file a personal restraint petition to advance those arguments. Otherwise, England faces a heavy burden to establish ineffective assistance despite not contesting the validity of his guilty plea. To show prejudice when a defendant has pleaded guilty, the defendant must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *In re Personal Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993). The record on appeal does not permit this court to make such a determination.

No. 38778-0-III
*State v. England*

CONCLUSION

We remand this prosecution to the superior court for resentencing under the former statutory scheme.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, J.

24